**FILED**
**Dec 20, 2024**
**01:37 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| **DAMIEN YEOMAN,** ) | **Docket No. 2024-30-2931** |
| **Employee,** ) | |
| **v.** ) | |
| **TRANSWOOD LOGISTICS, INC.,** ) | |
| **Employer,** ) | **State File No. 81990-2023** |
| **And** ) | |
| **ARCH INSURANCE COMPANY,** ) | |
| **Carrier.** ) | **Judge Brian K. Addington** |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

The Court held an expedited hearing on December 6, 2024, to determine if Mr. Yeoman is entitled to medical and temporary disability benefits. TransWood Logistics defended on the ground that Mr. Yeoman did not offer a reasonable excuse for his failure to give timely written notice. For the reasons below, the Court grants Mr. Yeoman's request for benefits.

### Claim History

Mr. Yeoman drove cement trucks for TransWood. The parties agreed that he was injured on September 26, 2023, when he slipped on a wet step as he was exiting his truck and felt a pull in his right shoulder. He continued with the delivery and returned to his home base.

Mr. Yeoman said he did not report his injury because he had not worked for TransWood very long, and he did not want to "get caught up" in all that a workers' compensation case entailed. Further, he thought it was a strain that would heal on its own. He also did not often go to the doctor, and his mother scheduled appointments for him when he did go.

1

Mr. Yeoman lives with his mother, and he told her about the incident but did not immediately go to the doctor. Thinking the injury was temporary, he self-limited at work and rested when he was at home. When his mother noticed that he continued to experience pain, she made an appointment for him with a nurse practitioner for October 10.

The nurse practitioner noted that Mr. Yeoman suffered preexisting conditions including high blood pressure, bipolar and attention deficit disorders, and sleep apnea. As for the current injury, he told the nurse practitioner that he believed he may have injured his shoulder while pulling a hose at his new job and that rest improved his shoulder pain. The nurse practitioner requested x-rays and returned him to work.

On October 20, Mr. Yeoman's manager, Jerry Smith, overheard him talking to a dispatcher about possibly missing work for his shoulder. Mr. Smith testified that Mr. Yeoman could not tell him the date the injury occurred but only that it happened in Hendersonville, North Carolina. Mr. Smith looked through records and determined Mr. Yeoman worked in Hendersonville on September 26.

Mr. Smith asked Mr. Yeoman to complete an accident report, but he only gave a scant account. Despite the lack of detail, Mr. Smith reported the accident to corporate. Mr. Smith testified he had no knowledge of the injury until October 20, and he did not observe Mr. Yeoman in pain or needing assistance before then,

TransWood sent Mr. Yeoman to general practitioner Dr. James Howell, who diagnosed a right-shoulder strain. He gave Mr. Yeoman lifting restrictions of no driving a company vehicle or lifting more than ten pounds and referred him to physical therapy. Mr. Yeoman notified TransWood of his restrictions, and it initially accommodated him at the worksite. Later, it sent him to work for KARM, a non-profit, when it became unable to accommodate the restrictions.

After a few physical therapy visits, Mr. Yeoman reported tingling in his fingers, and Dr. Howell ordered an MRI. The MRI showed "high grade" tendon tears, and Dr. Howell referred him to an orthopedic surgeon in January 2024. TransWood then denied his claim contending that he did not give timely notice. It also stopped his work for the non-profit in September after he missed a few days due to problems with his scheduling app.

While working light duty, Mr. Yeoman was unable to earn his average weekly wage. TransWood paid him one temporary partial disability check but stopped paying when it denied his claim. Mr. Yeoman argued TransWood owed him $17,565.94 in temporary partial disability benefits through September 7. He requested that amount plus continuing full temporary partial disability from September 8 because he has been unable to find work.

On November 13, Mr. Yeoman sent a questionnaire to Dr. Howell about causation and the orthopedic referral. The questionnaire asked if his shoulder tears were more than

50% related to his September 2023 injury, and Dr. Howell responded, "yes." He also said that Mr. Yeoman should only work under his previous restrictions. Lastly, Dr. Howell wrote, "He needs to see the orthopedic specialist as soon as possible and per referral dated January 23, 2024."

TransWood acknowledged that it originally accepted the claim and provided medical benefits, light-duty work, and some temporary partial disability benefits. It stopped Mr. Yeoman's benefits on the advice of counsel because he failed to give timely notice and did not provide a reasonable excuse.

### Findings of Fact and Conclusions of Law

Mr. Yeoman must show that he is likely to succeed at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2024).

Here, the parties agreed that Mr. Yeoman suffered an injury in the course and scope of his employment. The parties further agreed that he did not report his injury, nor did TransWood have actual knowledge, within 15 days of the incident as required by Tennessee Code Annotated section 50-6-201(a)(1). Thus, unless Mr. Yeoman had a reasonable excuse for his failure to give timely written notice, his claim must be denied. *Ernstes v. Printpack, Inc.,* No. W2023-00863-SC-R3-WC, 2024 Tenn. LEXIS 1, at *13-14 (Tenn. Workers. Comp. Panel Jan. 2, 2024). When considering whether an employee has shown a reasonable excuse, the Court can consider the employer's actual knowledge of the injury, the lack of prejudice to the employer, and the employee's excuse. *Id.*

Mr. Yeoman gave several reasons for not meeting the statutory deadline. First, he had not worked for TransWood very long, and he did not want to file a claim. The fear of losing a job is not a reasonable excuse. *Beck v. City of Brownsville,* No. W2016-01402-SC-R3-WC, 2017 Tenn. Lexis 407, at *11 (Tenn. Workers' Comp. Panel July 18, 2017). However, Mr. Yeoman did not state he feared losing his job. Rather, he did not want to immediately report an injury after he started a new job for what he thought was a pulled muscle that he believed would heal on its own.

Additionally, the nurse practitioner and the authorized doctor initially thought he only suffered a strain—the very condition he thought he had. It was not until Mr. Yeoman underwent an MRI that he and his doctor actually knew he had high-grade tendon tears.

Mr. Yeoman is a poor historian. He could not remember the first job he ever worked or the exact year he started working. Though he had heard the agreement in court about his date of injury, he could not recall the date until he had his memory refreshed.

When considering this evidence, the Court turns to the reasoning in *Livingston v. Shelby Williams Industries, Inc.,* 811 S.W.2d 511, 514 (Tenn. 1991). There, the Tennessee Supreme Court held that a reasonable excuse for not giving timely notice includes injuries

3

where the symptoms do not reveal the seriousness of the injury, an employee and physician have a limited understanding of his condition, and an employee is unable to keep sequences and events.

Finally, TransWood was not prejudiced by Mr. Yeoman's actions. Although he gave scant information about the date of injury, the manager was able to discern the date it occurred, complete reports about the injury, and send him to Dr. Howell. Mr. Yeoman complied with Dr. Howell's treatment, and TransWood complied with Dr. Howell's light-duty instructions. Mr. Yeoman has shown that his actions did not prejudice TransWood.

When considering *Ernstes* and *Livingston* together, the Court holds that Mr. Yeoman provided a reasonable excuse for reporting his injury on October 20 and is likely to succeed at a hearing on the merits. Thus, he is entitled to medical treatment recommended by Dr. Howell, which at this time is a referral to an orthopedic specialist.

Further, Mr. Yeoman is entitled to $17,565.94 from October 27, 2023, until September 7, 2024, and an additional amount of $10,410.15 from September 7 until the date of this order because he was unable to find work.[1] He is entitled to full temporary partial disability benefits ongoing, since Dr. Howell continued the work restrictions.

**IT IS ORDERED** as follows:

1. Mr. Yeoman is entitled to a panel of orthopedists under section 50-6-204(a)(3)(A)(ii) to treat his shoulder injury. TransWood shall provide ongoing reasonable and necessary medical treatment for Mr. Yeoman's shoulder injury under section50-6-204(a)(1)(A).

2. Mr. Yeoman is entitled to past temporary partial disability of $17,565.94, payable immediately as a lump sum. His counsel is entitled to fees of 20% from this award.

3. Mr. Yeoman is entitled to full temporary partial disability benefits beginning September 7, 2024, through the date of this order in the amount of $10,410.15 in lump sum as a result of his inability to find work within his restrictions. His counsel is entitled to fees of 20% from this award.

4. Mr. Yeoman is entitled to ongoing temporary disability benefits beginning December 20, 2024, until he finds work within his restrictions, the authorized doctor ends the restrictions, or he reaches maximum medical improvement.

---

[1] The evidence shows Mr. Yeoman's average weekly wage is $1,040.96 and his compensation rate is $694.01.

5. This case is set for a status hearing on **February 19, 2025**, at **10:00 a.m. Eastern**. Please dial 855-543-5044 to participate in the hearing. Failure to call may result in a determination made without your participation.

6. Unless interlocutory appeal of the Expedited Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The insurer or self-insured employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than seven business days after entry of this Order. Failure to submit the necessary confirmation within the period of compliance might result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED December 20, 2024.**

**Brian K. Addington**

_____
**BRIAN K. ADDINGTON, JUDGE**
**Court of Workers' Compensation Claims**

**Appendix**

Exhibits:

1. Amended Rule 72 Declaration of Damien Yeoman
2. Affidavit of Jerry Smith
3. Accident Report
4. Wage Statement
5. Wage Spreadsheet
6. Correspondence
7. Medical Records-Cherokee Health Systems
8. Medical Records- Family Care Specialists
9. Medical Records- Select Physical Therapy
10. Radiology Report
11. Medical Causation Letter-Dr. James Howell
12. Tennessee Crash Report
13. Wage Spreadsheet

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent on December 20, 2024.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Andrew Roberto, Employee's Attorney | | | X | aroberto@brownandroberto.com cwilliams@brownandroberto.com |
| Allison Tomey, Employer's Attorney | | | X | aptomey@mijs.com slmcculley@mijs.com |

_____

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on_____   ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____  ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*